IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARL MATTHEW FRIEND<br>341 W. Kline Avenue<br>Lansford, PA 18232<br><br>    Plaintiff,<br>  v.<br><br>WINDSTREAM SERVICES, LLC<br>d/b/a Kinetic by Windstream<br>4001 Rodney Parham Road<br>Little Rock, Arkansas 72212<br><br>    Defendant. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Darl Matthew Friend (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Windstream Services, LLC d/b/a Kinetic by Windstream (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.), the Pennsylvania Human Relations Act ("PHRA")[1] and Pennsylvania common law.  Plaintiff was unlawfully terminated by Defendant, and he suffered damages more fully described/sought herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. Upon information and belief, Defendant is incorporated under the laws of Delaware with headquarters and/or principal place of business in Arkansas.

4. This Court, in accordance with 28 U.S.C. § 1332, also has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendant is a citizen of Delaware and Arkansas, and the amount in controversy exceeds $75,000.

5. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where they are subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

7. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

2

**PARTIES**

8. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

9. Plaintiff is an adult who resides at the above-captioned address.

10. Defendant is a communications and technology company with approximately 10,000 employees and is headquartered at the above-captioned address.

11. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was hired by Defendant on or about April 17, 2022, and commenced employment on or about May 2, 2022. In total, Plaintiff was employed with Defendant for approximately 8.5 months.

14. Plaintiff held the position of Customer Relations Specialist ("CRS"). While employed, Plaintiff was supervised by *inter alia*, William Davis (a Manager) and Cody Clegg (Area Sales Manager / District Manager).

15. Plaintiff was deemed based out of Defendant's office location at 36 Tunnel Street, Lansford, PA 19232 (although it also common for Plaintiff to start or finish his day in transit from his residence working remotely).

16. Plaintiff has long suffered from back and leg / knee related disabilities (which became exacerbated by his work injury, as discussed *infra*). As a result of Plaintiff's disabilities,

3

Plaintiff was limited in his ability (at times) to perform some daily life activities, including but not limited to walking, bending and working (among other daily life activities).

17. Despite his aforementioned disabilities and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

18. During his employment with Defendant, Plaintiff at times worked up to 80 hours per week as an outside sales employee. In this capacity, Plaintiff would go from house to house, as he typically had quotas or goals of a certain number of contacts to make per day (and engagements or conversations to participate within).

19. Plaintiff also participated in and engaged in sales at many fairs, events and shows in the surrounding communities. Plaintiff worked very hard, worked long hours, and traveled extensively for Defendant. In addition, Plaintiff *was a high-performing employee* generating substantial sales.

20. On or about August 11, 2022, Plaintiff suffered a significant knee injury (torn meniscus), when he tripped over a piece of unleveled concrete while walking during work.

21. Plaintiff immediately notified Davis that he suffered a work injury. Davis also informed Plaintiff that Clegg was notified of Plaintiff's work injury.

22. Plaintiff received treatment for his work injury and filed a workers' compensation claim a short time later.

23. Davis treated Plaintiff with hostility following his workers' compensation injury and made comments to Plaintiff, like, "I guess you're not going to be able to sell now;" and "now the company is going to have to pay for your injury."

24. In the second half of 2022, Plaintiff was having severe flareups with his back and knee. Plaintiff was requiring therapy and was undergoing evaluations for injections and surgery.

25. In the summer of 2022, but most significantly in the fall (and primarily commencing in the October 2022 timeframe), Plaintiff was communicating with Defendant's human resources personnel, Anne Bennett (who, upon information and belief is based in Arkansas).

26. In particular, Plaintiff was asking for a medical accommodation (and had explained his health problems). After substantial delays in communicating with or following up with Plaintiff, Bennett began having some meaningful dialogue about potential accommodations with Plaintiff in the early December 2022 timeframe.

27. Plaintiff inquired about a potentially alternative role, as Bennett had told Plaintiff that there were two separate roles <u>available</u> (that did not require walking all day).

28. By on or about December 12, 2022, Bennett explained (via email) that Plaintiff could do an internal transfer, and she had shared the availability of two separate jobs: "RES Inside Sales Consultant (Inbound);" and "Inside Acct Exec – Outbound."

29. Plaintiff previously performed <u>outside</u> sales (which required walking and travel). Both of these (transfer) jobs were "<u>inside</u>" sales roles, handling sales or customer contacts without travel or walking (and in a sedentary capacity by phone).

30. Plaintiff informed Bennett that he would like to start in either transfer role *as soon as possible*. Bennet originally stated that Plaintiff could not be transferred to such a role until December of 2022, but later told Plaintiff it would not be until January of 2023.

31. Plaintiff was thus not accommodated <u>in any manner</u> from in or about October of 2022 through December of 2022 (despite that these two aforesaid roles were available). Plaintiff's

performance of his role without accommodation exacerbated his disabilities. There were also other non-job transfer accommodations Plaintiff could have been given (which Plaintiff mentioned).

32. For example, Plaintiff's geography could have been slightly adjusted (as others had less or different areas). If Plaintiff was simply assigned to less-hilly areas or neighborhoods, Plaintiff could have performed his job without pain (<u>even</u> in outside sales). Nothing was done to assist Plaintiff though.

33. Bennett informed Plaintiff that until mid-January 2023 (when Plaintiff would be transferred to an inside sales role), his role was going to remain the *status quo* and nothing would change.

34. Bennett stated to Plaintiff that he should just do the best that he could, until he was placed in a new position (which Plaintiff understood was going to happen, not that it possibly was going to happen).

35. Email communications reflect that Plaintiff was to start a "new hire class" for his "internal transfer" role on January 23, 2023.

36. Plaintiff was also sharing his health complications with Defendant's management in this timeframe. But Defendant's management not only did not engage in any accommodation process, but management also actually took retaliatory and/or discriminatory actions. For example, Defendant shut off Plaintiff leads from Facebook. Furthermore, Defendant canceled Plaintiff gas card for reimbursement. These actions occurred in the December 2022 timeframe.

37. When Plaintiff attempted to discuss some slight modification to his geography or other accommodation, or on occasions when Davis would see Plaintiff hobbling, Davis made comments to Plaintiff such as: "we need someone who can sell;" "take a medical leave;" and "quit

the job if you can't do it." When Plaintiff brought up any accommodation issue, Davis would respond: "not my problem, talk to HR."

38. These are just some examples, as Davis made over a dozen discriminatory comments to Plaintiff and exhibited no empathy whatsoever. Davis and Clegg were cold, rude and only cared about sales numbers.

39. Plaintiff was missing some time from work in December of 2022 and provided medical information to Bennett, Davies and Clegg (even when Plaintiff was hospitalized).

40. Commencing in late December of 2022, Plaintiff required a medical leave. Plaintiff contacted HR **and** management about his need for a short medical leave. Plaintiff was in extensive pain, could barely walk, and struggled to even bend.

41. Since Plaintiff had a workers' compensation claim open, Defendant was provided with a medical note, dated January 6, 2023, which stated: "P[atient] unable to return to work due to back injury . . . Will need off until further notice and evaluation by specialist and primary care doctor."

42. Plaintiff provided multiple medical documents to Defendant directly and/or through its counsel (its agent(s)). Plaintiff also verbally told Defendant's management / HR that he was unable to continue working outside sales for the time being, and that he was awaiting his transfer role.

43. Plaintiff also left voicemails for Davis with details of Plaintiff's need for a medical leave. *In January of 2023, Plaintiff was never sent any forms, FMLA information, or letters by Defendant to have his physicians fill out. It was **obvious*** that Plaintiff was on a medical leave and medically unable to work (pending his transfer-role).

44. Plaintiff learned that he was terminated by email (via termination effective January 13, 2023). Bennett in essence claimed that Plaintiff was not responsive enough from mid-December through mid-January of 2023. Bennett falsely asserted that Davis was unable to reach Plaintiff and that Plaintiff was thus terminated for "job abandonment."

45. This is outrageous, as Plaintiff was not contacted as claimed via phone; nobody informed Plaintiff that anything was required of him during his medical leave via email; and Plaintiff was not mailed any correspondence outlining anything necessary from him. ***Had anything specific ever been sought medically, Plaintiff would have provided it very promptly.*** It is absurd that Defendant's HR made no request from Plaintiff for any information relative to his medical leave and then falsely alleged that Plaintiff failed to provide enough information.

46. Plaintiff was not medically accommodated in the second half of 2022, which caused Plaintiff significant emotional distress as a result of ongoing pain. Had Defendant simply permitted Plaintiff to commence working in his transfer position, Plaintiff could have ended his medical leave immediately (or may not have needed it in the first place).

47. Instead, Plaintiff was terminated roughly one (1) week before he was scheduled to commence in the transfer role. Furthermore, had Defendant given Plaintiff a medical accommodation of approximately 2.5 months off from work (through part of March to recover), Plaintiff could have resumed in any job (including his prior CRS role).

48. Plaintiff believes and therefore avers that he was terminated because of: (a) his known and/or perceived health problems; (b) his record of impairment; and/or (c) his requested accommodations and for reasons related to his workers' compensation injury and/or claim (which constitutes illegal retaliation). Defendant also failed and/or refused to engage in the interactive process with Plaintiff and failed to properly accommodate him (discussed *supra*).

8

**Count I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**(1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate;**
**[3] Retaliation; and [4] Wrongful Termination)**
**-Against Both Defendants-**

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

51. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times.

52. Plaintiff kept Defendant informed of his disabilities and need for medical treatment and other accommodations.

53. Plaintiff requested reasonable accommodations from Defendant including, but not limited to, job modifications and/or an alternate/modified role.

54. Plaintiff was terminated, on or about January 13, 2023, in close temporal proximity to requesting/utilizing accommodations for his own health conditions.

55. Plaintiff believes and therefore avers that he was terminated because of: (a) his known and/or perceived health problems; (b) his record of impairment; and (c) his requested accommodations (which constitutes illegal retaliation).

56. Defendant failed to properly accommodate Plaintiff, by refusing and/or failing to engage in the interactive process by terminating Plaintiff after requesting/utilizing reasonable medical accommodations.

57. Defendant's actions as aforesaid constitute violations of the ADA.

## COUNT II
## Common-Law Wrongful Discharge
### (Public Policy Violation)
### -Against Both Defendants-

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Upon information and belief, Plaintiff was terminated in substantial part for making claims for workers' compensation benefits and/or seeking workers' compensation benefits and/or for his work-related injuries (as discussed *supra*).

60. It is against Pennsylvania's public policy for an employee to be terminated for making workers' compensation claims and/or seeking workers' compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

61. The temporal proximity and retaliatory animus between Plaintiff's claims for workers' compensation and his termination creates an inference that his termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay

increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

  C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

  G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with ==Federal Rule of Civil Procedure 38(b)==.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Dated:   November 10, 2023